## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Minnesota Deer Farmers Association, Aaron Seitz, Allen Huju, Brian and Sarah Evans, Deb and John Holthaus, Devon and Emily Lien, Gary Olson, Jim Simonson, Chase Simonson, Lisa Clark, Ray Matejcek, Michael Robokoff, Scott Fier, Steven and Melissa Uchytil, Andrew C. Whitcomb, Scott Salonek, Jamey and Renae Blome, Joseph Collins, Ken Williams, Luke and Kendra Hanson, Mark and Mary Volk, Nolan and Stephanie Buchner, Paul Agre, Samantha Uchytil, Stanley and Francella Tvedt, Jennifer Lynn and Mark Henricus Boon, Trudy Graves, Steve and Peggy Porter, Nolan Porter and Dennis Udovich, | Case No. __23-3907__ |

Plaintiffs,

v.

**Complaint**

The State of Minnesota, Sarah Strommen in her official capacity as Commissioner of the Minnesota Department of Natural Resources, or her successor, Erica Sawatzke, in her official capacity as Board President of Minnesota Board of Animal Health, or her successor, Peggy Anne Hawkins, in her official capacity as Board Vice President of Minnesota Board of Animal Health, or her successor, Jessica Koppien-Fox, in her official capacity as a Member of Minnesota Board of Animal Health, or her successor, Alex Stade, in his official capacity as Member of Minnesota Board of Animal Health, or his successor, Steve Neil, in his official capacity as Member of Minnesota Board of Animal Health, or his successor, Brandon Schafer, in his official capacity as Member of Minnesota Board of Animal Health, or his successor,

Defendants.

The plaintiff Minnesota Deer Farmers Association and the named individual plaintiffs bring this action against the Minnesota Department of Natural Resources and the Minnesota Board of Animal Health as follows:

## Introduction

The plaintiffs Minnesota Deer Farmers Association, individual deer farmers, and interested deer or deer herd purchasers, bring this action against the Minnesota Department of Natural Resources and Minnesota Board of Animal Health, seeking declaratory and injunctive relief under 42 U.S.C. § 1983 to challenge the constitutionality of 2023 revisions to Minnesota Statutes § 35.155, subd. 10 and other provisions of Chapter 35. The constitutional challenge involving § 35.155, subd. 10(c), for example, ultimately seeks to prohibit the Plaintiffs to pursue their profession, occupation, or calling as white-tailed deer farmers. The Plaintiffs seek declaratory and preliminary injunctive relief to enjoin Minn. Stat. § 35.155, subd. 10(c), from enforcement by the Minnesota Department of Natural Resources. Specifically, the plaintiffs seek to prevent these agencies from enforcing laws which will eliminate white-tailed deer farming in the State of Minnesota.

The legislative statutory scheme governing white-tailed deer farmers violates:

- the Equal Protection Clause of the Fourteenth Amendment (class of one discrimination between white-tailed deer farmers with immediate family members and other deer farmers without immediate family members);

- the Equal Protection clause of the 14th Amendment (discrimination between white-tailed deer farmers with registrations and those without);

- the Takings Clause of the Fifth Amendment (DNR authorized to destroy herd and regulatory taking without just compensation); and

- the Due Process Clause of the Fourteenth Amendment (State's complete prohibition against the right of citizens to ply their trade, practice their occupation, or pursue a common calling as white-tailed deer farmers).

The statutory provisions are unconstitutional and the DNR must be refrained from infringing upon the Plaintiffs' protected constitutional rights. Hence, preliminary injunctive relief is appropriate and necessary.

## Jurisdiction

1.     This Court has jurisdiction under 28 U.S.C. §§ 1331, 1343 (1)-(4) and 42 U.S.C. §§ 1983, 1985(2), (3) and § 1988 (civil rights statutes) for violations of the U.S. Constitution.

2.     This Court is authorized to grant declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202, Federal Rules of Civil Procedure 57 and 65, and has general legal and equitable powers.

3.     Venue is proper in this Court under 28 U.S.C. § 1391 and other applicable law, because the alleged deprivations of constitutional rights occurred in counties located within this District of Minnesota, and future deprivations of its constitutional rights are threatened and are likely to occur in this District.

## Federal and State Laws Involved

4.     The Fourteenth Amendment of the United States Constitution is accurately quoted, in part, as:

No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any

> State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const., Amend. XIV, sec. 1.

5.     The Takings Clause of the Fifth Amendment to the United States Constitution is accurately quoted, in part, as follows: "Nor shall private property be taken for public use, without just compensation."

6.     Minnesota allows property owners the right to sue in inverse condemnation, Minnesota, under Minnesota Statute § 117.045 which is accurately quoted as follows:

> Upon successfully bringing an action compelling an acquiring authority to initiate eminent domain proceedings relating to a person's real property which was omitted from any current or completed eminent domain proceeding, such person shall be entitled to petition the court for reimbursement for reasonable costs and expenses, including reasonable attorney, appraisal and engineering fees, actually incurred in bringing such action….

7.     By statutory act, the plaintiffs believe that Minnesota has waived sovereign immunity for inverse condemnation claims.

8.     The Takings Clause of the Minnesota Constitution, article 1, section 13, is accurately quoted, in part, as follows:  "Private property shall not be taken, destroyed or damaged for public use without just compensation therefor, first paid or secured."

9.     The plaintiffs believe that in Minnesota persons may sue the state for torts with certain exclusions and limitations found under Minn. Stat. § 3.736, subd. 3, including an exclusion for a loss caused by an act or omission of a state employee exercising due care in the execution of a invalid statute. The statutory provision is accurately quoted as follows:

> Without intent to preclude the courts from finding additional cases where the state and its employees should not, in equity and good conscience, pay

compensation for personal injuries or property losses, the legislature declares that the state and its employees are not liable for the following losses:

(a) a loss caused by an act or omission of a state employee exercising due care in the execution of a valid or invalid statute or rule….

10.     The Declaratory Judgement Act, 28 U.S.C. § 2201, allows federal courts to issue a declaration that settles the legal rights of parties involved in a case of actual controversy.

11.     As to Minnesota Statutes § 35.155, subd. 10(c), as amended, plaintiffs pled in this complaint it is unconstitutional and it is accurately quoted as follows:

> The board must not allow new registrations under this section for possessing white-tailed deer. This paragraph does not prohibit a person holding a valid registration under this subdivision from selling or transferring the person's registration to an immediate family member. A valid registration may be sold or transferred only once under this paragraph. Before the board approves a sale or transfer under this paragraph, the board must verify that the registration is in good standing and the eligible family member must pay a onetime transfer fee of $500 to the board.

**Parties and Factual Background**

**Plaintiff Minnesota Deer Farmers Association**

12.     Plaintiff Minnesota Deer Farmers Association is a non-profit corporation, organized in the State of Minnesota as an association of deer farmers in Minnesota. Scott Fier is the President of the Association. The mission of the Association includes: fostering the pursuit of education and awareness within the deer farming industry; sharing access to educational experience; business opportunities; organizational events; encouraging teamwork, growth, acceptance of responsibility, and recognition for achieving; increasing awareness of research, promotion, and knowledge of the deer farming industry; a

5

commitment to high standards and pride in accomplishment; and, understanding that the strength of Minnesota Deer Farmers Association is in its membership.

13.     All plaintiffs are members of the Minnesota Deer Farmers Association as white-tailed deer farmers.

14.     The Association is interested in maintaining the existing white-tailed deer livestock industry in Minnesota and to further grow white-tailed farming in the state.

15.     The Association recognizes that Minn. Stat. § 35.155, subd. 10(c), and its enforcement are an imminent threat to all white-tailed deer farmers in Minnesota.

16.     The Minnesota Deer Farmers Association is against Minnesota's efforts to eradicate the profession or occupation of white-tailed deer farmers in Minnesota as it will harm the white-tailed deer farmers as members of the Association.

17.     Moreover, the Association is against treating white-tailed deer farmers in classes that prevents or otherwise limit the selling of or transferring of a white-tailed deer registration in Minnesota between other white-tailed deer farmers or those who wish to engage in that profession or occupation, harming the white-tailed deer farmers as members of the Association.

18.     The Association is also against the taking of white-tailed deer from white-tailed deer farmers without just compensation, harming the white-tailed deer farmers as members of the Association.

**Plaintiff Aaron Seitz**

19.     Plaintiff Aaron Seitz resides at 4529 Nebish Road NE, Seitz, Minnesota and owns a Minnesota white-tailed deer farm.  He has a white-tailed deer valid registration with

6

the Minnesota Board of Animal Health. The registration is subject to an annual renewal, including an annual inventory of the herd with the governing state authority.

20.      Seitz considers being a white-tailed deer farmer as a profession (and nothing less than an occupation).

21.      In the operation of his farm, Seitz also engages the services of veterinarians, purchases of feed, fuel, and other services needed to maintain his operation, estimating the farm's contribution to the local economy to be at least $75,000.00 per year.

22.      In addition, by his own definition of "immediate family," Seitz may sell or transfer his white-tailed deer registration once, to his son, if interested. Seitz recognizes that his son may not thereafter sell or transfer the transferred registration. On the other hand, Seitz cannot sell or transfer his current whitetail deer registration to a non-immediate family member, like his nephews, or a person who is presently a non-registered white-tailed deer farmer.

23.      If an opportunity arose and the price was right, he would sell his entire herd to another person. And, if that occurred, Seitz would start another white-tailed deer herd; however, he understands that he is prohibited by law from acquiring a new white-tailed deer farm registration.

**Plaintiff Allen Huju**

24.      Plaintiff Allen Huju resides at 50397 State Hwy 6, Bigfork, Minnesota, 56628, and owns a Minnesota white-tailed deer farm.  Huju has a valid white-tailed deer registration with the Minnesota Board of Animal Health. The registration is subject to an annual renewal, including an annual inventory of the herd with the governing state authority.

25.     Huju considers being a white-tailed deer farmer as a profession (and nothing less than an occupation).

26.     In the operation of the his white-tailed deer farm, he engages the services of veterinarians, purchase feed, fuel, and other services needed to maintain their operation, estimating the farm's contribution to the local economy as between $15,000 and $20,000 per year.

27.     By Huju's own definition of "immediate family," he does not have an immediate family member. Because Huju does not have an immediate family member, it is his understanding that he cannot sell or transfer his current whitetail deer registration to a non-immediate family member or a person who is presently a non-registered white-tailed deer farmer.

28.     Meanwhile, if an opportunity arose and the price right, Huju would sell his entire herd to another person. And if that occurred, the Huju would start another white-tailed deer herd; however, he understands that by law he is prohibited from acquiring a new white-tailed deer farming registration.

**Plaintiffs Brian and Sarah Evans**

29.     Plaintiffs Brian and Sarah Evans reside at 25853 8th Street W., Zimmerman, Minnesota, 55398 and own a Minnesota white-tailed deer farm. The Evans's hold a valid white-tailed deer registration with the Minnesota Board of Animal Health. The registration is subject to an annual renewal, including an annual inventory of the herd with the governing state authority.

30.     Brian and Sarah Evans consider being a white-tailed deer farmer as a profession (and nothing less than an occupation).

31.     In the operation of the Evans's farm, they engage the services of veterinarians, purchase feed, fuel, and other services needed to maintain their operation, estimating the farm's contribution to the local economy to be at least $33,000.00 per year.

32.     By their own definition of "immediate family," Brandon and Sarah Evans could sell or transfer their white-tailed registration once to an immediate family member, if interested. On the other hand, Brandon and Sarah Evans cannot sell or transfer their current whitetail deer registration to a non-immediate family member or a person who is presently a non-registered white-tailed deer farmer.

33.     Meanwhile, if an opportunity arose and the price was right, they would sell their entire herd to another person. And if that occurred, Brian and Sarah Evans would start another white-tailed deer herd; however, they are prohibited by law from acquiring a new white-tailed deer farm registration.

**Plaintiffs Deb and John Holthaus**

34.     Plaintiffs Deb and John Holthaus reside at 12494 30th Street, Bowles, Minnesota, 56314, and own a Minnesota white-tailed deer farm. The Holthaus's hold a valid white-tailed deer registration with the Minnesota Board of Animal Health. The registration is subject to an annual renewal, including an annual inventory of the herd with the governing state authority.

35.     Deb and John Holthaus consider being a white-tailed deer farmer as a profession (and nothing less than an occupation).

36.    In the operation of the Deb and John Holthaus farm, they engage the services of veterinarians, purchase feed, fuel, and other services needed to maintain their operation, estimating the farm's contribution to the local economy to be at least $30,000 to 45,000.00 per year.

37.    By their own definition of "immediate family," Deb and John Holthaus do not have an immediate family member to sell or transfer their white-tailed registration. However, they do have nephews who might be interested in white-tailed deer farming. But Deb and John Holthaus understand that they cannot sell or transfer their current whitetail deer registration to a non-immediate family member or a person who is presently a non-registered white-tailed deer farmer.

38.    Meanwhile, if an opportunity arose and the price right, they would sell their entire herd to another person. And if that occurred, Deb and John Holthaus would start another white-tailed deer herd; however, they also understand that they are prohibited by law from acquiring a new white-tailed deer farm registration.

**Plaintiffs Devon and Emily Lien**

39.    Plaintiffs Devon and Emily Lien resides at 1071 165th NW, New London, Minnesota, 56273 and own a Minnesota white-tailed deer farm.  The Lien's hold a valid white-tailed deer registration with the Minnesota Board of Animal Health. The registration is subject to an annual renewal, including an annual inventory of the herd with the governing state authority.

40.    Devon and Emily Lien consider being a white-tailed deer farmer as a profession (and nothing less than an occupation).

10

41.    In the operation of the Liens' farm, they engage the services of veterinarians, purchase feed, fuel, and other services needed to maintain their operation, estimating the farm's contribution to the local economy to be at least $10,000.00 per year.

42.    By their own definition of "immediate family," Devon and Emily Lien could sell or transfer their white-tailed registration once to an immediate family member, if interested. At the present time, their children are five and seven years-old. Regardless, Devon and Emily Lien understand that they cannot sell or transfer their current whitetail deer registration to a non-immediate family member or a person who is presently a non-registered white-tailed deer farmer.

43.    Meanwhile, if an opportunity arose and the price right, they would sell their entire herd to another person. And if that occurred, Devon and Emily Lien would start another white-tailed deer herd; however, they also understand that they are prohibited by law from acquiring a new white-tailed deer farm registration.

**Plaintiff Gary Olson**

44.    Plaintiff Gary Olson resides at 34526 State Hwy 30, Lanesboro, Minnesota, 55949, and owns a Minnesota white-tailed deer farm.  Olson holds a valid white-tailed deer registration with the Minnesota Board of Animal Health. The registration is subject to an annual renewal, including an annual inventory of the herd with the governing state authority.

45.    Olson considers being a white-tailed deer farmer as a profession (and nothing less than an occupation).

46.     In the operation of his farm, Olson engages the services of veterinarians, purchase feed, fuel, and other services needed to maintain their operation, estimating the farm's contribution to the local economy to be at least $80,000 per year.

47.     By his own definition of "immediate family," Olson does not have an immediate family member to sell or transfer his white-tailed registration. Moreover, Olson does not have other family members, such as nephews or cousins who might be interested in white-tailed deer farming. Olson does understand that he cannot sell or transfer their current whitetail deer registration to a non-immediate family member or a person who is presently a non-registered white-tailed deer farmer.

48.     Meanwhile, if an opportunity arose and the price right, Olson would sell his entire herd to another person.  And, if that occurred, Olson would start another white-tailed deer herd; however, recognizes that he is prohibited by law from acquiring a new white-tailed deer farm registration.

**Plaintiff Jim Simonson**

49.     Plaintiff Jim Simonson resides at 18743 450th Ave., Springfield, Minnesota, 56087. Jim Simonson owns a Minnesota white-tailed deer farm.   Jim Simonson holds a valid white-tailed deer registration with the Minnesota Board of Animal Health. The registration is subject to an annual renewal, including an annual inventory of the herd with the governing state authority.

50.     Both Jim Simonson considers being a white-tailed deer farmer as a profession (and nothing less than an occupation).

51.     In the operation of the Simonson farm, Jim engages the services of veterinarians, purchase feed, fuel, and other services needed to maintain their operation, estimating the farm's contribution to the local economy to be at least $50,000.00 to $60,000.00 per year.

52.     By Jim Simonson's own definition of "immediate family," he could sell or transfer his white-tailed registration to his son, Chase Simonson, as an immediate family member, who is interested and has a small herd of white-tailed deer. Jim also has a daughter but has not shown an interest in starting a white-tailed deer farm.

53.     Under the current law, although his son Chase Simonson has a white-tailed deer herd of his own, Jim Simonson believes he could still sell or transfer the white-tailed deer registration once, to his son Chase.

54.     However, Jim Simonson understands that he can neither could sell nor transfer a current whitetail deer registration to a non-immediate family member or a person who is presently a non-registered white-tailed deer farmer.

55.     Meanwhile, if an opportunity arose and the price right, Jim Simonson would sell the entire herd to another person. And, if that occurred, Jim would start another white-tailed deer herd; however, he also understands that he is prohibited by law from acquiring a new white-tailed deer farm registration. Likewise, if Jim were to transfer or sell his registration to his son Chase, Jim would be unable to obtain another white-tailed deer registration.

13

**Plaintiff Chase Simonson**

56.     Plaintiff Chase Simonson, 18743 450th Avenue, Springfield, Minnesota, 56087. Chase Simonson is the son of Jim Simonson. Chase Simonson owns a Minnesota white-tailed deer farm.   Chase Simonson holds a valid white-tailed deer registration with the Minnesota Board of Animal Health. The registration is subject to an annual renewal, including an annual inventory of the herd with the governing state authority.

57.     Chase Simonson considers being a white-tailed deer farmer as a profession (and nothing less than an occupation).

58.     In the operation of the Simonson farm, he engages the services of veterinarians, purchase feed, fuel, and other services needed to maintain his operation, which has a positive impact on the local economy.

59.     By Chase Simonson's own definition of "immediate family," he could sell or transfer his white-tailed registration to his dad, Jim Simonson, or possibly to his sister (if she were interested) as immediate family members, albeit only once. However, at the present time, Chase has no family of his own, thus, he does not have an immediate family member of his own to sell or transfer his present registration.

60.     Chase Simonson understands that if he sold or transferred his white-tailed deer registration to his dad Jim Simonson, Chase would be unable to obtain another white-tailed deer registration.  If he retained his registration and had a family, Chase understands that he could sell or transfer the white-tailed deer registration only once to his immediate family member in the future.

61.     Meanwhile, Chase Simonson understands that he could neither sell nor transfer his current whitetail deer registration to a non-immediate family member or a person who is presently a non-registered white-tailed deer farmer.

62.     Meanwhile, if an opportunity arose and the price right, Chase would sell the entire herd to another person. And, if that occurred, Chase would start another white-tailed deer herd; however, he also understands that he is prohibited by law from acquiring a new white-tailed deer farm registration.

**Plaintiff Lisa Clark**

63.     Plaintiff Lisa Clark resides at 19459 525th Ave., Wells, Minnesota, 56097, and owns a Minnesota white-tailed deer farm.  Clark holds a valid white-tailed deer registration with the Minnesota Board of Animal Health. The registration is subject to an annual renewal, including an annual inventory of the herd with the governing state authority.

64.     Clark considers being a white-tailed deer farmer as profession (and nothing less than an occupation).

65.     In the operation of the Clark's farm, she engages the services of veterinarians, purchases feed, fuel, and other services needed to maintain their operation, estimating the farm's contribution to the local economy to be at least $4,400.00 per year.

66.     By her own definition of "immediate family," Clark could sell or transfer her white-tailed registration once to an immediate family member, if interested. On the other hand, Clark understands that she cannot sell or transfer her current whitetail deer registration to a non-immediate family member or a person who is presently a non-registered white-tailed deer farmer.

67.     Meanwhile, if an opportunity arose and the price right, Clark would sell her entire herd to another person. And, if that occurred, Clark would start another white-tailed deer herd; however, she also understands that she is prohibited by law from acquiring a new white-tailed deer farm registration.

**Plaintiff Ray Matejeck**

68.     Plaintiff Ray Matejeck resides at 5457 NE 64th Ave., Owatonna, Minnesota, 55060, and owns a Minnesota white-tailed deer farm.  Matejeck holds a valid white-tailed deer registration with the Minnesota Board of Animal Health. The registration is subject to an annual renewal, including an annual inventory of the herd with the governing state authority.

69.     Matejcek considers being a white-tailed deer farmer as a profession (and nothing less than an occupation).

70.     In the operation of his farm, Matejcek engages the services of veterinarians, purchase feed, fuel, and other services needed to maintain their operation, estimating the farm's contribution to the local economy to be at least $43,000.00 per year.

71.     By his own definition of "immediate family," Matejcek does not have an immediate family member to sell or transfer his white-tailed registration. Moreover, Matejcek does not have other family members, such as nephews or cousins, who might be interested in white-tailed deer farming. Matejcek does understand that he cannot sell or transfer their current whitetail deer registration to a non-immediate family member or a person who is presently a non-registered white-tailed deer farmer.

72.    Meanwhile, if an opportunity arose and the price right, Matejcek would sell his entire herd to another person. And, if that occurred, Matejcek would start another white-tailed deer herd; however, he recognizes that he is prohibited by law from acquiring a new white-tailed deer farm registration.

**Plaintiff Michael Robokoff**

73.    Plaintiff Michael Robokoff resides at 9501–180th Street, Milaca, Minnesota, 56353, and owns a Minnesota white-tailed deer farm.  Robokoff holds a valid white-tailed deer registration with the Minnesota Board of Animal Health. The registration is subject to an annual renewal, including an annual inventory of the herd with the governing state authority.

74.    Robokoff considers being a white-tailed deer farmer as  a profession (and nothing less than an occupation).

75.     In the operation of his farm, Robokoff engages the services of veterinarians, purchases feed, fuel, and other services needed to maintain his operation, estimating the farm's contribution to the local economy to be at least $7,000 to $10,000.00 per year.

76.    By his own definition of "immediate family," Robokoff could sell or transfer his white-tailed registration once to an immediate family member, if interested. On the other hand, Robokoff understands that he cannot sell or transfer his current whitetail deer registration to a non-immediate family member or a person who is presently a non-registered white-tailed deer farmer.

77.    Meanwhile, if an opportunity arose and the price right, Robokoff would sell his entire herd to another person. And if that occurred, Robokoff would start another white-

tailed deer herd; however, he also understands that he is prohibited by law from acquiring a new white-tailed deer farm registration.

**Plaintiff Scott Fier**

78.     Plaintiff Scott Fier resides at  3788–260th Ave., Porter, Minnesota, 56280, and owns a Minnesota white-tailed deer farm.  Fier holds a valid white-tailed deer registration with the Minnesota Board of Animal Health. The registration is subject to an annual renewal, including an annual inventory of the herd with the governing state authority.

79.      Fier considers being a white-tailed deer farmer as a profession (and nothing less than an occupation). In the operation of his farm, Fier engages the services of veterinarians, purchase feed, fuel, and other services needed to maintain his operation, estimating the farm's contribution to the local economy to be at least $100,000.00 per year.

80.     In addition, prior to recent changes in Minnesota law governing white-tailed deer, Fier would import deer from other herds in other states to enhance his herd's genetic lines. This would include breeder buck, open and bred does, and fawns. In fact, Fier purchased deer from other out-of-state herds every year until the law changed.

81.     The amended provision under Minn. ch. 35, prohibits the purchase of deer from any state that had an incident of chronic wasting disease in the last five years, regardless of where in the state that occurred. Meaning, Fier cannot purchase deer from a herd unaffected by CWD even if the incident occurred hundreds of miles from the incident or in another unaffected corner of the same state.

82.     By Fier's own definition of "immediate family," he could sell or transfer his white-tailed registration once to immediate family members, if interested. On the other hand,

even though Fier had cousins interested in white-tailed deer farming, he understands that he cannot sell or transfer his current whitetail deer registration to a non-immediate family member or a person who is presently a non-registered white-tailed deer farmer.

83.  Meanwhile, if an opportunity arose and the price right, Fier would sell his entire herd to another person. And, if that occurred, Fier would start another white-tailed deer herd; however, he also understands that he is prohibited by law from acquiring a new white-tailed deer farm registration.

**Plaintiff Andrew C. Whitcomb**

84.  Plaintiff Andrew C. Whitcomb resides at 3947 Baptist Church Road, Princeton, Minnesota, 55371, and owns a Minnesota white-tailed deer farm.   Whitcomb holds a valid white-tailed deer registration with the Minnesota Board of Animal Health. The registration is subject to an annual renewal, including an annual inventory of the herd with the governing state authority.

85.  Whitcomb considers being a white-tailed deer farmer as a profession (and nothing less than an occupation).

86.   In the operation of the Whitcomb's farm, Whitcomb engages the services of veterinarians, purchases feed, fuel, and other services needed to maintain his operation, estimating the farm's contribution to the local economy to be at least $45,000.00 per year.

87.  By his own definition of "immediate family," Whitcomb could sell or transfer his white-tailed registration once to an immediate family member, if interested. On the other hand, Whitcomb understands that he cannot sell or transfer his current whitetail deer

registration to a non-immediate family member or a person who is presently a non-registered white-tailed deer farmer.

88.     Meanwhile, if an opportunity arose and the price right, Whitcomb would sell his entire herd to another person. And, if that occurred, Whitcomb would start another white-tailed deer herd; however, he also understands that he is prohibited by law from acquiring a new white-tailed deer farm registration.

**Plaintiff Scott Salonek**

89.     Plaintiff Scott Salonek resides at 15520 S. Diamond Lk Rd, Dayton, Minnesota, 55327, and owns a Minnesota white-tailed deer farm.  Scott Salonek holds a valid white-tailed deer registration with the Minnesota Board of Animal Health. The registration is subject to an annual renewal, including an annual inventory of the herd with the governing state authority.

90.     Salonek considers being a white-tailed deer farmer as a profession (and nothing less than an occupation).

91.      In the operation of his farm, Salonek engages the services of veterinarians, purchases feed, fuel, and other services needed to maintain his operation, estimating the farm's contribution to the local economy to be at least $17,000 to $20,000.00 per year.

92.     By his own definition of "immediate family," Salonek could sell or transfer his white-tailed registration once to an immediate family member, if interested. On the other hand, Salonek understands that he cannot sell or transfer his current whitetail deer registration to a non-immediate family member or a person who is presently a non-registered white-tailed deer farmer.

93.     Meanwhile, if an opportunity arose and the price right, Salonek would sell his entire herd to another person. And, if that occurred, Salonek would start another white-tailed deer herd; however, he also understands that he is prohibited by law from acquiring a new white-tailed deer farm registration.

**Plaintiffs Jamey and Renae Blome**

94.     Plaintiffs Jamey and Renae Blome reside at 4366 270th St. E., Medford, Minnesota, 55049, and own a Minnesota white-tailed deer farm.  The Blomes hold a valid white-tailed deer registration with the Minnesota Board of Animal Health. The registration is subject to an annual renewal, including an annual inventory of the herd with the governing state authority.

95.     The Blomes consider being a white-tailed deer farmer as a profession (and nothing less than an occupation).

96.     In the operation of their farm, the Blomes engage the services of veterinarians, purchases feed, fuel, and other services needed to maintain his operation, estimating the farm's contribution to the local economy to be at least $60,000.00 per year.

97.     By their own definition of "immediate family," the Blomes could sell or transfer their white-tailed registration once to an immediate family member, if interested. On the other hand, the Blomes understand that they cannot sell or transfer their current whitetail deer registration to a non-immediate family member or a person who is presently a non-registered white-tailed deer farmer.

98.     Meanwhile, if an opportunity arose and the price right, the Blomes would sell their entire herd to another person. And if that occurred, the Blomes would start another

white-tailed deer herd; however, they also understand that they are prohibited by law from acquiring a new white-tailed deer farm registration.

**Plaintiff Joseph Collins**

99.     Plaintiff Joseph Collins resides at 2221 Lake George Pkwy NW, Cedar, Minnesota, 55011, and owns a Minnesota white-tailed deer farm. Joseph Collins holds a valid white-tailed deer registration with the Minnesota Board of Animal Health. The registration is subject to an annual renewal, including an annual inventory of the herd with the governing state authority.

100.     Collins considers being a white-tailed deer farmer as a profession (and nothing less than an occupation).

101.     In the operation of his farm, Collins engages the services of veterinarians, purchase feed, fuel, and other services needed to maintain their operation, estimating the farm's contribution to the local economy to be at least $17,500.00 per year.

102.     By his own definition of "immediate family," Collins does not have an immediate family member to sell or transfer his white-tailed registration. Moreover, Collins does not have other family members, such as nephews or cousins, who might be interested in white-tailed deer farming.

103.     Collins does understand that he cannot sell or transfer his current whitetail deer registration to a non-immediate family member or a person who is presently a non-registered white-tailed deer farmer.

104.     Meanwhile, if an opportunity arose and the price right, Collins would sell his entire herd to another person. And, if that occurred, Collins would start another white-tailed

deer herd; however, he recognizes that he is prohibited by law from acquiring a new white-tailed deer farm registration.

**Plaintiff Ken Williams**

105.    Plaintiff Ken Williams resides 30567 440th St., Melrose, Minnesota, 56352, and owns a Minnesota white-tailed deer farm.  Ken Williams holds a valid white-tailed deer registration with the Minnesota Board of Animal Health. The registration is subject to an annual renewal, including an annual inventory of the herd with the governing state authority.

106.    Williams considers being a white-tailed deer farmer as  a profession (and nothing less than an occupation).

107.    In the operation of his farm, Williams will engage the services of veterinarians, purchases feed, fuel, and other services needed to maintain his operation, estimating the farm's contribution to the local economy to be at least $25,000 to $30,000.00 per year.

108.    By his own definition of "immediate family," Williams could sell or transfer their white-tailed registration once to an immediate family member, if interested. On the other hand, Williams understands that they cannot sell or transfer their current whitetail deer registration to a non-immediate family member or a person who is presently a non-registered white-tailed deer farmer.

109.    Meanwhile, if an opportunity arose and the price right, Williams would sell their entire herd to another person. And, if that occurred, Williams would start another white-tailed deer herd, however, he also understands that he is prohibited by law from acquiring a new white-tailed deer farm registration.

**Plaintiffs Luke and Kendra Hanson**

110.    Plaintiffs Luke and Kendra Hanson reside at 18873 57th Ave., Milaca, Minnesota, 56353 and own a Minnesota white-tailed deer farm.  The Hansons hold a valid white-tailed deer registration with the Minnesota Board of Animal Health. The registration is subject to an annual renewal, including an annual inventory of the herd with the governing state authority.

111.    The Hansons considers being a white-tailed deer farmer as a profession (and nothing less than an occupation).

112.    In the operation of their farm, the Hansons engage the services of veterinarians, purchases feed, fuel, and other services needed to maintain their operation, estimating the farm's contribution to the local economy to be at least $7,500.00 per year.

113.    By their own definition of "immediate family," the Hansons could sell or transfer their white-tailed registration once to an immediate family member, if interested. On the other hand, the Hansons understand that they cannot sell or transfer their current whitetail deer registration to a non-immediate family member or a person who is presently a non-registered white-tailed deer farmer.

114.    Meanwhile, if an opportunity arose and the price right, the Hansons would sell their entire herd to another person. And, if that occurred, the Hansons would start another white-tailed deer herd; however, they also understand that they are prohibited by law from acquiring a new white-tailed deer farm registration.

**Plaintiffs Mark and Mary Volk**

115.    Plaintiffs Mark and Mary Volk reside at 9095 160th Ave., Royaton, Minnesota, 56373, and own a Minnesota white-tailed deer farm.  The Volks hold a valid white-tailed deer registration with the Minnesota Board of Animal Health. The registration is subject to an annual renewal, including an annual inventory of the herd with the governing state authority.

116.    The Volks consider being a white-tailed deer farmer as a profession (and nothing less than an occupation).

117.    In the operation of the Volk's farm, they engage the services of veterinarians, purchases feed, fuel, and other services needed to maintain his operation, estimating the farm's contribution to the local economy to be at least $25,000 to $30,000.00 per year.

118.    By their own definition of "immediate family," the Volks could sell or transfer their white-tailed registration once to an immediate family member, if interested. On the other hand, the Volks understand that they cannot sell or transfer their current whitetail deer registration to a non-immediate family member or a person who is presently a non-registered white-tailed deer farmer.

119.    Meanwhile, if an opportunity arose and the price right, the Volks would sell their entire herd to another person. And, if that occurred, the Volks would start another white-tailed deer herd; however, they also understand that they are prohibited by law from acquiring a new white-tailed deer farm registration.

**Plaintiffs Nolan and Stephanie Buchner**

120.    Plaintiffs Nolan and Stephanie Buchner reside at 27242 330th Ave NW, Warren, Minnesota, 56762, and own a Minnesota white-tailed deer farm.  The Buchners hold a valid white-tailed deer registration with the Minnesota Board of Animal Health. The registration is subject to an annual renewal, including an annual inventory of the herd with the governing state authority.

121.    The Buchners consider being a white-tailed deer farmer as a profession (and nothing less than an occupation).

122.    In the operation of the Buchner's farm, they engage the services of veterinarians, purchases feed, fuel, and other services needed to maintain his operation, estimating the farm's contribution to the local economy to be at least $12,000.00 per year.

123.    By their own definition of "immediate family," the Buchners could sell or transfer their white-tailed registration once to an immediate family member, if they had an immediate family member, but do not. Meanwhile, the Buchners understand that they cannot sell or transfer their current whitetail deer registration to a non-immediate family member or a person who is presently a non-registered white-tailed deer farmer.

124.    Meanwhile, if an opportunity arose and the price right, the Buchners would sell their entire herd to another person. And if that occurred, the Buchners would start another white-tailed deer herd; however, they also understand that they are prohibited by law from acquiring a new white-tailed deer farm registration.

**Plaintiff Paul Agre**

125.    Plaintiff Paul Agre resides at 10511 State Hwy 11, Greenbush, Minnesota, 56726, and owns a Minnesota white-tailed deer farm.  Agre holds a valid white-tailed deer registration with the Minnesota Board of Animal Health. The registration is subject to an annual renewal, including an annual inventory of the herd with the governing state authority.

126.    Agre considers being a white-tailed deer farmer is a profession (and nothing less than an occupation).

127.    In the operation of his farm, Agre engages the services of veterinarians, purchases feed, fuel, and other services needed to maintain his operation, estimating the farm's contribution to the local economy to be at least $5,000.00 per year.

128.    By his own definition of "immediate family," Agre could sell or transfer their white-tailed deer registration once to an immediate family member, if he had an immediate family member, but does not. Meanwhile, Agre understands that he cannot sell or transfer his current whitetail deer registration to a non-immediate family member or a person who is presently a non-registered white-tailed deer farmer.

129.    Meanwhile, if an opportunity arose and the price right, Agre would sell his entire herd to another person. And, if that occurred, Agre would start another white-tailed deer herd; however, he also understands that he is prohibited by law from acquiring a new white-tailed deer farm registration.

**Plaintiff Samantha Uchytil**

130.    Plaintiff Samantha Uchytil resides at 19291 59th St. NE, New London, Minnesota, 56273 and owns a Minnesota white-tailed deer farm. Uchytil is the daughter of plaintiffs Steven and Melissa Uchytil.

131.    Samantha Uchytil is interested in white-tailed deer farming and considers being a white-tailed deer farmer as a profession (and nothing less than an occupation).

132.    Although at the present time she does not have a white-tailed deer registration, Samantha is expected to have transferred to her, her parents' current white-tailed deer registration. Presently, Samantha Uchytil does not have a family of her own and understands that even if she did receive a transferred registration from her parents, she could not transfer the registration to another immediate family member.

133.    In addition, Samantha Uchytil understands that she cannot sell or transfer her whitetail deer registration once transferred to her, to a non-immediate family member or a person who is presently a non-registered white-tailed deer farmer.

134.    Meanwhile, Samantha Uchytil is of the opinion that once the white-tailed deer operation of her parents is under her control, if an opportunity arose and the price right, Samantha would sell her entire herd to another person. And, if that occurred, Samantha would start another white-tailed deer herd; however, she also understands that she is prohibited by law from acquiring a new white-tailed deer farm registration.

**Plaintiffs Steven and Melissa Uchytil**

135.    Plaintiffs Steven and Melissa Uchytil reside at 14681 175th St. NE, Atwater, Minnesota, 56209, and own a Minnesota white-tailed deer farm.  The Uchytils hold a valid white-tailed deer registration with the Minnesota Board of Animal Health. The registration is subject to an annual renewal, including an annual inventory of the herd with the governing state authority.

136.    Steven and Melissa Uchytil consider being a white-tailed deer farmer as a profession (and nothing less than an occupation).

137.    In the operation of the Uchytils' farm, they engage the services of veterinarians, purchases feed, fuel, and other services needed to maintain his operation, estimating the farm's contribution to the local economy to be at least $140,000.00 per year.

138.    By their own definition of "immediate family," the Uchytils could sell or transfer their white-tailed registration once to an immediate family member. Their daughter, Samantha Uchytil, is interested in accepting a transfer of her parents' white-tailed deer registration.

139.    Meanwhile, the Uchytils understand that they cannot sell or transfer their current whitetail deer registration to a non-immediate family member or a person who is presently a non-registered white-tailed deer farmer.

140.    Furthermore, if an opportunity arose and the price right, the Uchytils would sell their entire herd to another person. And if that occurred, the Uchytils would start another white-tailed deer herd; however, they also understand that they are prohibited by law from acquiring a new white-tailed deer farm registration.

**Plaintiffs Stanley and Francella Tvedt**

141.    Plaintiffs Stanley and Francella Tvedt reside at 19462 US Hwy 59 SE,
Plummer, Minnesota, 56748, and own a Minnesota white-tailed deer farm.  The Tvedts hold
a valid white-tailed deer registration with the Minnesota Board of Animal Health. The
registration is subject to an annual renewal, including an annual inventory of the herd with
the governing state authority.

142.    The Tvedts consider being a white-tailed deer farmer as a profession (and
nothing less than an occupation).

143.    In the operation of the Tvedts' farm, they engage the services of veterinarians,
purchases feed, fuel, and other services needed to maintain his operation, estimating the
farm's contribution to the local economy to be at least $35,000 to $40,000.00 per year.

144.    By their own definition of "immediate family," the Tvedts could sell or
transfer their white-tailed registration once to an immediate family member, if interested. In
fact, their daughter is not interested because of the current state of the law, because, as she
understands it, the state seeks to eliminate white-tailed deer farming as a profession or as an
occupation in Minnesota.

145.    Meanwhile, with their daughter's lost interest, the Tvedts understand that they
cannot sell or transfer their current whitetail deer registration to a non-immediate family
member or a person who is presently a non-registered white-tailed deer farmer.

146.    But, if an opportunity arose and the price right, the Tvedts would sell their
entire herd to another person. And, if that occurred, the Tvedts would start another white-

tailed deer herd; however, they also understand that they are prohibited by law from acquiring a new white-tailed deer farm registration.

**Plaintiffs Jennifer Lynn and Mark Henricus Boon**

147.    Plaintiffs Jennifer Lynn and Mark Henricus Boon reside at 3436 Iresfeld Ave. NW, Maple Lake, Minnesota, 55358, and own a Minnesota white-tailed deer farm. The Boons hold a valid white-tailed deer registration with the Minnesota Board of Animal Health. The registration is subject to an annual renewal, including an annual inventory of the herd with the governing state authority.

148.    The Boons consider being a white-tailed deer farmer as a profession (and nothing less than an occupation).

149.     In the operation of their farm, the Boons engage the services of veterinarians, purchases feed, fuel, and other services needed to maintain his operation, estimating the farm's contribution to the local economy to be at least $10,000.00 per year. By their own definition of "immediate family," the Boons could sell or transfer their white-tailed registration once to an immediate family member, if interested.

150.    On the other hand, the Boons understand that they cannot sell or transfer their current whitetail deer registration to a non-immediate family member or a person who is presently a non-registered white-tailed deer farmer.

151.    Meanwhile, if an opportunity arose and the price right, the Boons would sell their entire herd to another person. And, if that occurred, the Boons would start another white-tailed deer herd; however, they also understand that they are prohibited by law from acquiring a new white-tailed deer farm registration.

31

**Plaintiff Trudy Graves**

152.    Plaintiff Trudy Graves reside at16456 County Road 7, Hutchinson, Minnesota, 55350, and owns a Minnesota white-tailed deer farm.  Trudy Grave's holds a valid white-tailed deer registration with the Minnesota Board of Animal Health. The registration is subject to an annual renewal, including an annual inventory of the herd with the governing state authority.

153.    Graves considers being a white-tailed deer farmer as a profession (and nothing less than an occupation).

154.    In the operation of her farm, Graves engages the services of veterinarians, purchase feed, fuel, and other services needed to maintain their operation, estimating the farm's contribution to the local economy to be at least $3,000.00 per year.

155.     By her own definition of "immediate family," Trudy has a son, Cullin Lickfelt and a daughter, Kiley Lickfelt. Hence, as she understands the current law, Trudy Graves could sell or transfer her white-tailed deer registration either Cullin or Kiley, but not both separately, and one once. In addition, she does have a nephew who might be interested in white-tailed deer farming. But, Graves understands that she cannot sell or transfer her current whitetail deer registration to a non-immediate family member or a person who is presently a non-registered white-tailed deer farmer.

156.    Meanwhile, if an opportunity arose and the price right, Graves would sell her entire herd to another person. And, if that occurred, the Graves would start another white-tailed deer herd; however, she also understands that she is prohibited by law from acquiring a new white-tailed deer farm registration.

32

**Plaintiffs Steve and Peggy Porter**

157.    Plaintiffs Steve and Peggy Porter reside at 1828 350th Ave, Lake Bronson, Minnesota, 56734, and own a Minnesota white-tailed deer farm.  The Porters hold a valid white-tailed deer registration with the Minnesota Board of Animal Health. The registration is subject to an annual renewal, including an annual inventory of the herd with the governing state authority.

158.    The Porters consider being a white-tailed deer farmer as a profession (and nothing less than an occupation).

159.    In the operation of their farm, the Porters engage the services of veterinarians, purchases feed, fuel, and other services needed to maintain his operation, estimating the farm's contribution to the local economy to be at least $100,000.00 per year.

160.    By their own definition of "immediate family," the Porters could sell or transfer their white-tailed registration once to an immediate family member, if interested. Their son, Nolan Porter, is interested.

161.    On the other hand, the Porters understand that they cannot sell or transfer their current whitetail deer registration to a non-immediate family member or a person who is presently a non-registered white-tailed deer farmer.

162.    Meanwhile, if an opportunity arose and the price right, the Porters would sell their entire herd to another person. And, if that occurred, the Porters would start another white-tailed deer herd; however, they also understand that they are prohibited by law from acquiring a new white-tailed deer farm registration.

**Plaintiff Nolan Porter**

163.    Plaintiff Nolan Porter is the son of Steve and Peggy Porter. He lives at 1828 350th Ave, Lake Bronson, Minnesota, 56734. Nolan has helped his parents operate their white-tailed deer farm and is interested in running a white-tailed deer farm.

164.    As an immediate family member, Nolan would be able to purchase or accept the transfer of his parents white-tailed deer registration.

165.    Nolan Porter is interested in white-tailed deer farming and considers being a white-tailed deer farmer as a profession (and nothing less than an occupation).

166.    Although at the present time Nolan does not have a white-tailed deer registration, Nolan is expected to have transferred to him, his parents' current white-tailed deer registration.

167.    Presently, Nolan does not have a family of his own and understands that even if he did receive a transferred registration from his parents, he could not transfer the registration to another immediate family member.

168.    In addition, Nolan Porter understands that he cannot sell or transfer his whitetail deer registration once transferred to him, to a non-immediate family member or a person who is presently a non-registered white-tailed deer farmer.

169.    Meanwhile, Nolan Porter is of the opinion that once the white-tailed deer operation of his parents is under his control, if an opportunity arose and the price right, Nolan would sell his entire herd to another person. And, if that occurred, Nolan would start another white-tailed deer herd; however, he also understands that he is prohibited by law from acquiring a new white-tailed deer farm registration.

**Plaintiff Dennis Udovich**

170.    Plaintiff Dennis Udovich resides at 12545 Willow River Road, Greaney, Minnesota does not own a white-tailed deer farm. He currently does not have a white-tailed deer registration However, Udovich did have white-tailed deer farm and had a registration with the Board of Animal Health in 1996 to 2021.

171.    For personal reasons, Udovich decided to get out of white-tailed deer farming as a profession and subsequently destroyed his herd. But now, Udovich wants to pursue his profession (or at the very least, occupation) as a white-tailed deer farmer, to raise white-tailed deer as livestock. He does consider a white-tailed deer farmer as a profession, at the very least, an occupation. He does not have a white-tailed deer registration.

172.    Udovich later reached out to the Minnesota Board of Animal Health, who previously issued white-tailed deer registrations, inventories, and renewals, to obtain a new white-tailed deer registration. He was told that the Board (now the DNR) was prohibited from issuing white-tailed deer registrations.

173.    Udovich is now aware that any person willing to sell him a herd with a white-tailed deer registration, that person would be unable to sell or transfer to him a white-tailed deer registration.

174.    Udovich is now aware that under these factual circumstances, he cannot pursue and is prevented from pursuing a profession or occupation as a white-tailed deer farmer in Minnesota.

175.    All named plaintiffs as their profession (or occupation) as white-tailed deer farmers, either engages in or can pursue as their respective operations allow, the following activities to generate income::

- Hunting;

- selling to other farm operations;

- selling stocker bucks to hunting operations;

- selling open does and bred does;

- selling fawns, semen straws, and food, as venison; and

- any by-products of deer such as but not limited to velvet antlers sold to Asian markets for medicinal purposes, hides, ivories and urine used widely by hunters to attract deer.

176.    Each plaintiff generates annually, income from their white-tailed deer operation to the extent they engage in any of the above activities, from $8,000.00 to $400,000.00.

**Defendant Minnesota Department of Natural Resources**

177.    The Minnesota Department of Natural Resources now oversees farmed white-tailed deer. The DNR is now responsible for annual white-tailed deer registration renewals and inventory. **Exhibit 1.**

178.    The DNR is now responsible for the one-time transfer or sale of an existing white-tailed deer registration to an immediate family member. **Exhibit 2.**

36

179.    The DNR, as the present administrator and enforcer of white-tailed deer farming, is prohibited from issuing new white-tailed deer registrations under Minn. Stat. § 35.155, subd. 10(c). *See* **Exhibit 3**.

180.    Defendants State of Minnesota and its agencies Department of Natural Resources and the Board of Animal Health are sued for monetary damages as the State of Minnesota and its agencies waived sovereign immunity for takings claims with the enactment of Minnesota Statutes § 117.045 (compelling acquisition in certain cases).

**Defendant Minnesota Board of Animal Health**

181.    Defendant Minnesota Board of Animal Health, until recent amendments to Minn. ch. 35, was responsible for farmed cervidae registration applications. **Exhibit 3.**

182.    New registration applications for farmed cervidae are prohibited. *See* Minn. Stat. § 35.155, subd. 10(c); **Exhibit 3.**

183.    While the responsibility for administering and enforcing the statutes and rules for farmed white-tailed deer have been transferred from the defendant Minnesota Board of Animal Health, to the DNR, the Board retained and is responsible for administering and enforcing the statutes and rules for all other farmed cervidae.

184.    However, the plaintiffs believe that the DNR commissioner may contract with the Board of Animal Health to administer some or all statutes and rules for farmed white-tailed deer.

185.    In addition, the plaintiffs believe the DNR commissioner must enter into an interagency agreement with the Board of Animal Health which establishes roles and

responsibilities necessary to protect the health of cervidae in Minnesota consistent with state regulations.

186.   It is unknown to the plaintiffs at the time of this complaint as to what extent the DNR and the Board of Animal Health have entered into any agreement or agreements regarding the enforcement or administration of farmed white-tailed deer. Whether these agreements exist or not, the Board is a proper party because of the role the Board can play with the consent of the DNR presently or in the future.

187.   To the extent all allegations apply to the DNR, they are also attributed to the Board of Animal Health whether as stated or implied.

**Defendant State of Minnesota**

188.   The State of Minnesota is generally, responsible for the administration and enforcement of the laws of the State, and in particular Minn. Stat. § 35.155, subd. 10(c), and all other provisions of the law governing white-tailed deer farming.

## History of Deer Farming, Generally

189.   A deer farm, technically a "ranch," is a fenced piece of a land suitable for grazing that is populated with deer species, such as elk, moose, reindeer, or white-tailed deer, raised as livestock or for use in game hunting.

190.   Deer farming has been a well-established industry for nearly a century. **Exhibit 4** at 6.  While, whitetail deer farming as a commercial venture has a relatively short history, records of whitetail deer farming has been found in the United States dating back to the turn of the century.

191.    At that time, whitetail deer populations were dangerously low due to mass habitat devastation and widespread hunting. In an effort to replenish the whitetail population, wildlife managers and interested farmers and ranchers began to restore whitetail deer habitats and implement population management programs.

192.    Whitetail deer management has grown considerably with deer operations focused on producing quality animals.

193.    In a 2017 study, found that the total national impact on deer breeding and hunting operations reached $7.9 billion. **Exhibit 4** at 15.

194.    In Minnesota, in a similar 2017 study, the state economic impact exceeded $24.2 million (in 2016), generating an estimated 759 total jobs supported by cervid farming (595 full-time and 164 part-time). **Exhibit 5**. *See also* **Exhibit 5a**.

195.    Minnesota, however, as a heavily regulated livestock industry, has witnessed the loss of white-tailed deer farming operations from approximately 274 in 2017 to today's number of approximately 125. The total number of captive deer herds was just over 6,790 in 2022, down from 9,630 in 2019.

### Minnesota Deer Farming

**Minnesota's state regulatory scheme governing white-tailed deer farming is intended to eradicate this livestock industry.**

196.    Minnesota Statutes § 35.153, subd. 2, defines "cervidae" to include deer, elk, moose, caribou, reindeer and muntjac and is accurately quoted as follows:

> "Cervidae" means animals that are members of the family Cervidae and includes, but is not limited to, white-tailed deer, mule deer, red deer, elk, moose, caribou, reindeer, and muntjac.

197.    Minnesota Statutes § 35.153, subd. 3, defines "farmed cervidae" as cervidae raised for any purpose and appropriately registered, formerly with the Board of Animal Health and now with the DNR and is accurately quoted as follows:

> "Farmed Cervidae" means Cervidae that are:
>
> (1) raised for any purpose; and (2) registered in a manner approved by the Board of Animal Health.

198.    Minnesota Statutes § 35.153, subd. 4, defines "owner" as a person who owns or raises farmed cervidae and is accurately quoted as follows:

> "Owner" means a person who owns or is responsible for the raising of farmed Cervidae.

199.    Minnesota Statutes § 35.153, subd. 5, defines "herd" as all cervidae maintained on common ground or under common ownership or supervision, even if geographically separated, and is accurately quoted as follows:

> "Herd" means all Cervidae:
>
> (1) maintained on common ground for any purpose; or
>
> (2) under common ownership or supervision, geographically separated, but that have an interchange or movement of animals without regard to whether the animals are infected with or exposed to diseases.

200.    Minnesota Statutes § 17.452, subd. 4, describes "farmed cervidae as livestock and not wildlife for purposes of game farm, hunting or wildlife laws. The provision is accurately quoted as follows:

> Farmed Cervidae are livestock and are not wild animals for purposes of game farm, hunting, or wildlife laws. Farmed Cervidae and their products are farm products and livestock for purposes of financial transactions and collateral.

201. Minnesota Statutes § 17.452, subd. 5, describes the raising of farmed cervidae as an agricultural production and an agricultural pursuit. The provision is accurately quoted as follows:

> Raising farmed Cervidae is agricultural production and an agricultural pursuit.

202. Minnesota Statutes § 35.155, subdivision 10(a), authorizes a person to possess live cervidae in Minnesota only if the person is registered with the Board of Animal Health, now the DNR, and be legally compliant. The provision is accurately quoted as follows:

> A person may not possess live Cervidae in Minnesota unless the person is registered with the Board of Animal Health and meets all the requirements for farmed Cervidae under this section. Cervidae possessed in violation of this subdivision may be seized and destroyed by the commissioner of natural resources.

203. In 2023, the Minnesota legislature amended Minn. Stat. § 35.155, subd. 10, to include subdivision 10(c), that prohibits new registrations for white-tailed deer. The same subdivision prohibits he the sale or transfer of a valid white-tailed deer registration except for a one-time transfer to an immediate family member.

204. Minnesota Statutes § 35.155, subdivision 10(c), as amended, is accurately quoted as follows:

> The board must not allow new registrations under this section for possessing white-tailed deer. This paragraph does not prohibit a person holding a valid registration under this subdivision from selling or transferring the person's registration to an immediate family member. A valid registration may be sold or transferred only once under this paragraph. Before the board approves a sale or transfer under this paragraph, the board must verify that the registration is in good standing and the eligible family member must pay a onetime transfer fee of $500 to the board.

205.    Minnesota Statutes Ch. 35 does not define "immediate family member."

206.    All plaintiffs who have no "immediate family members," and by their own definition of "immediate family member," understand that they cannot sell or transfer their respective valid white-tailed deer registration to a non-immediate family member (such as a nephew, nice, cousin, grandchild) or any other person interested in starting a white-tailed deer farm.

207.    Minnesota's statutory restriction on alienation of deer livestock prohibits non-registered, non-family members from purchasing deer livestock.

208.    Because of Minnesota's statutory restriction on alienation of deer livestock, there is no market for white-tailed deer livestock and in particular herds.

209.    Because of Minnesota's statutory restriction on alienation of white-tailed deer livestock, a purchaser cannot purchase white-tailed deer livestock from a non-registered, non-family member.  An example is plaintiff Dennis Udovich who, as a previous white-tailed deer farmer, would purchase or have transferred to him an existing valid white-tailed deer registration or white-tailed deer herd. However, Udovich is prohibited from purchasing or obtaining a white-tailed deer registration, and hence, is prohibited from obtaining a  white-tailed deer herd or possessing a white-tailed deer herd.

210.    Because of Minnesota's statutory restriction on alienation of white-tailed deer livestock, a seller cannot sell deer livestock to a non-registered, non-family member.

211.    The statutory restriction on alienation of deer livestock damages plaintiff deer farmers, but for Udovich, because they cannot sell their deer livestock to non-registered, non-family members.

212.    The statutory restriction on alienation of deer livestock damages non-registered, non-family members because they cannot purchase deer livestock, such as plaintiff Udovich.

**The government's stated purpose for the state law's restriction on alienation of deer livestock and eradication of white-tailed deer farming to contain Chronic Wasting Disease lacks justification.**

213.    The government's stated purpose for the state law's restriction on alienation of white-tailed deer livestock is to contain Chronic Wasting Disease (CWD).

214.    CWD is a transmissible spongiform encephalopathy (TSE) affecting all cervidae. CWD is an infectious, degenerative disease of animals that causes brain cells to die, ultimately leading to the death of the affected animal.

215.    Unlike other infectious diseases, TSEs are not caused by bacteria or viruses, but rather by a naturally occurring protein, that when folded incorrectly, becomes infectious and deadly. The misfolded proteins are called prions and include similar diseases such as BSE (mad cow disease) in cattle, Creutzfeldt-Jakob disease (CJD) in humans and scrapie in sheep.

216.    In the United States, CWD affects mule deer, white-tailed deer, red deer, sika deer, elk, caribou, and moose.

217.    In 1967, CWD was first identified in mule deer at a government research facility in northern Colorado.

218.    Since then, CWD has been found in free-ranging and captive deer populations in 30 U.S. states and four Canadian provinces.

219.    There is no known "cure" for CWD.

220.    Minnesota officials recognize that there is no cure for CWD and that the occurrence of CWD happens in the wild, and that it could happen with farmed white-tailed deer.

221.    Minnesota has put into place statutory and regulatory requirements to contain CWD through testing and methods to keep farmed deer separated from wild deer and wild deer from farmed deer.  These measures also include annual herd inspection by a certified veterinarian and triple fencing with specific height requirements.

222.    Minnesota officials cannot directly attribute wild white-tailed deer CWD in Minnesota to incidents of CWD with farmed white-tailed deer or vice versa.

223.    The captive cervidae industry nationally, and in this state through the Minnesota Deer Farmers Association, has taken a proactive approach to CWD on several fronts.

224.    In addition to having monitoring programs, the industry has contributed funding for research and has been at the forefront of a testing procedure that samples a live animal's DNA to determine its susceptibility to the disease.

225.    White-tailed deer farmers are currently using DNA testing to manage their livestock.

226.    Livestock certification programs and other initiatives within the industry have been effective as methods to contain, identify, or otherwise ensure CWD is not transmitted between farmed white-tailed deer an wild deer, or from wild deer to farmed white-tailed deer.

227.   One purpose of the industry's chronic wasting programs is to track movement of deer within the industry, and if the disease is found in its early stages and addressed immediately.

## Count I

## Violation of civil rights under 42 U.S.C. § 1983, for violation of Equal Protection Clause, seeking declaratory and injunctive relief against the DNR and the Board of Animal Health.

228.   Plaintiffs adopt and incorporate by reference all previous paragraphs as if fully restated in support of the further allegations asserted under Count I.

229.   The Fourteenth Amendment of the U.S. Constitution guarantees, among other things, that no state shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const., amend. XIV.

230.   Under 42 U.S.C. § 1983, the statutory provisions provide persons a federal cause of action based on state violations of federal law and is accurately quoted, in part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress….

231.   Minnesota Statutes § 35.155, subd. 10(a) provides that if a person has a valid white-tailed deer registration, the person may sell or transfer the registration to "an immediate family member."

232.    Because Minn. ch. 35 does not define "immediate family member," the plaintiffs consider it to mean, generally, their smallest family unit, including parents, siblings, spouse, and children.

233.    Here, for example, plaintiffs Bloome, Boon, Clark, Evans, Fier, Graves, Hanson, Lien, Steve and Peggy Porter, Robokoff, Salonek,  Seitz, Jim Simonson, Tvedt, Steve and Melissa Uchytil, Volk, Whitomb, and Williams, by their own definition, have "immediate family members."

234.    In contrast, plaintiffs Agre, Buchner, Collins, Holthaus, Huju, Matejcek, Olson, Nolan Porter, Chase Simonson, and Samatha Uchytil do not have "immediate family members," by their own definition.

235.    Hence, the plaintiffs with immediate family members under Minn. Stat. § 35.155, subd. 10(c), may sell or transfer their valid white-tailed deer registration to an immediate family member albeit once.

236.    In contrast, the plaintiffs with no immediate family members under the provision of Minn. Stat. § 35.155, subd. 10(c) have no corresponding right to sell or transfer their valid white-tailed registration to anyone—even once.

237.    The state law is a restraint on the alienation of white-tailed deer livestock.  It prohibits plaintiffs from transferring to the class of non-registered, non-family members while allowing a one-time transfer to the class of registered or family members.

238.    Minnesota Statutes § 35.155, subd. 10(c) has created two different classes of white-tailed deer farmers all of whom have a valid registration, but for plaintiff Udovich. However, only one class—those with immediate family members—may sell or transfer their

respective registration to that family member while the other class—without immediate family members—is prohibited from making a similar sale or transfer, even if only once.

239.    The operation of Minn. Stat. § 35.155, subd. 10(c), gives preferred treatment to a favored class of people having a valid white-tailed deer registration and an immediate family member.

240.    There is no reasonable justification for creating two classes and treating them differently under Minn. Stat. § 35.155, subd. 10(c).

241.    In creating two classes, Minn. Stat. § 35.155, subd. 10(c), discriminates between those that have valid white-tailed deer registrations and immediate family members and those that have valid white-tailed deer registrations and do not have immediate family members.

242.    Therefore, Minn. Stat. § 35.155., subd. 10(c), is unconstitutional because it violates the Equal Protection Clause of the Fourteenth Amendment.

243.    Plaintiffs request this Court to declare Minn. Stat. § 35.155, subd. 10(c) as violating the Fourteenth Amendment's Due Process Clause finding the statutory provision unconstitutional, issue the appropriate injunctive relief regarding the constitutional violation, award reasonable attorney fees and costs and all other available relief under the law as is necessary or just under the allegations as pled.

244.    Plaintiffs requests this Court to declare that Minn. Stat. § 35.155, subd. 10(c), violates the Equal Protection Clause of the Fourteenth Amendment, issue the appropriate injunctive relief to prevent the discriminatory conduct alleged, and to award all relief

applicable under the law, including reasonable attorney fees and costs, and all other relief necessary and just.

## Count II

**Minnesota Statute § 35.155, subd. 10(c) prohibits the plaintiffs' ability to pursue their profession as white-tailed deer farmers in violation of their substantive due process protections under the Fourteenth Amendment.**

245.    Plaintiffs adopt and incorporate by reference all previous paragraphs as if fully restated in support of the further allegations asserted under Count II.

246.    All of the plaintiffs believe that the Due Process Clause of the Fourteenth Amendment includes the right to pursue a particular calling, profession, or occupation— here, white-tailed deer farming.

247.    All plaintiffs consider their choice to be a white-tailed deer farmer as a profession or at the very least a chosen occupation since operating a deer farm, requires not only continual personal energy, but innovation and research to be successful.

248.    Under the provisions of Minn. Stat. § 35.155, subd. 10(c), the state seeks to ensure the complete eradication of the white-tailed deer farmer as a profession or occupation.

249.    All plaintiffs believe that the state's objective under the statutory scheme identified under Minn. Stat. § 35.155, subd. 10(c), and other provisions, is to eliminate the profession or occupation of white-tailed deer farming.

250.    For example, while plaintiffs Bloome, Boon, Clark, Evans, Fier, Graves, Hanson, Lien, Steve and Peggy Porter, Robokoff, Salonek, Seitz, Jim Simonson, Tvedt, Steve and Melissa Uchytil, Volk, Whitomb, and Williams may have immediate family members, not

all plaintiffs in this class have immediate family members interested in purchasing or accepting a transfer of an existing valid white-tailed deer registration. Here, only plaintiff Fier (cousins), Graves (nephew), Holthaus (nephews), Seitz (nephews) Jim Simonson (son), and Steve and Samatha Uchytil (daughter) are interested in purchasing or having transferred to them a valid white-tailed deer registration.

251.    In addition, plaintiff Dennis Udovich, a former white-tailed deer farmer, sought another white-tailed deer registration but was advised that the then Minnesota Board of Animal Health was prohibited from issuing a new white-tailed deer registration. *See* **Exhibit 6**. Udovich desires to pursue his profession or occupation but is prohibited from doing so because he is unable to obtain a white-tailed deer registration.

252.    The enforcement of white-tailed deer statutes and regulations is now the responsibility of the defendant Minnesota Department of Natural Resources. Until recently, the responsibility of administering and enforcing white-tailed deer farming was that of the defendants Board of Animal Health.

253.    Some enforcement or administering of white-tailed deer statutes and regulations may also be the responsibility of the Board of Animal Health if the DNR has contracted with the Board to do so.

254.    Regardless, the DNR and the Board of Animal Health are prohibited from issuing new white-tailed deer registrations.

255.    All plaintiffs who have a current valid white-tailed deer registration would be willing to sell their herd or otherwise transfer their registration to another person.

256. Udovich is a person who is willing to purchase or have transferred to him a white-tailed deer registration with a herd.

257. All plaintiffs with a valid white-tailed deer registration cannot sell or transfer their registration to neither a non-immediate family member, like Udovich, nor a person who does not have a registration, like Udovich, who wishes to pursue white-tailed deer farming as a profession or occupation.

258. Furthermore, all plaintiffs who would sell their respective white-tailed deer herd to another person for the right price, would seek to start another herd; however, all plaintiffs similarly situated, are prohibited from obtaining a new white-tailed deer registration. This means that once any plaintiff (but Udovich) sells, transfers, or allows their registration to expire, they would be prohibited from obtaining another white-tailed deer registration.

259. Hence, the plaintiffs are prevented from pursuing the profession or occupation as a white-tailed deer farmer.

260. Under Minn. Stat. § 35.155, subd. 10(c), plaintiff Udovich, and all other persons similarly situated, are prohibited from pursuing a profession or occupation as a white-tailed deer farmer because he is prohibited from obtaining a white-tailed deer registration.

261. All other plaintiffs also believe that when they sell, transfer, or allow their current registrations to expire, and seek to pursue their profession or occupation again, Minn. Stat. § 35.155, subd. 10(c) prohibits them from doing so.

262.    Plaintiff Udovich believes that the Fourteenth Amendment protects the liberty right to purse a particular calling, profession, or occupation as a fundamental right.

263.    All other plaintiffs believe that the Fourteenth Amendment protects the liberty right to purse a particular calling, profession, or occupation as a fundamental right.

264.    Plaintiff Udovich believes that Minnesota Statute § 35.155, subd. 10(c) completely prohibits him from engaging in his "calling" as a white-tailed deer farmer because he is prohibited from obtaining a white-tailed deer registration.

265.    The complete prohibition to pursue his profession or occupation as a white-tailed deer farmer, plaintiff Udovich believes is a violation of the Due Process Clause of the Fourteenth Amendment.

266.    Indeed, as the remaining plaintiffs have also asserted, they too would be completely prohibited to pursue their profession or occupation as white-tailed deer farmers if they discontinued their farming by (1) selling their entire herd to another person; or (2) sell or transfer their current valid white-tailed deer registration (for example, to an immediate family member), or (3) allow their current registration to expire, and later sought to re-start their white-tailed deer operation, but like Udovich, are prohibited from doing so under Minn. Stat. § 35.155, subd. 10(c).

267.    Plaintiffs request this Court to declare Minn. Stat. § 35.155, subd. 10(c) as violating the Fourteenth Amendment's Due Process Clause finding the statutory provision unconstitutional, issue the appropriate injunctive relief regarding the constitutional violation, award reasonable attorney fees and costs and all other available relief under the law as is necessary or just under the allegations as pled.

## Count III

## Violation of civil rights under 42 U.S.C. § 1983, for violation of Equal Protection Clause, seeking declaratory and injunctive relief against the DNR or the Board of Animal Health or both.

268.   Plaintiffs adopt and incorporate by reference all previous paragraphs as if fully restated in support of the further allegations asserted under Count III.

269.   The Fourteenth Amendment of the U.S. Constitution guarantees, among other things, that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., amend. XIV.

270.   Under 42 U.S.C. § 1983, the statutory provisions provide persons a federal cause of action based on state violations of federal law and is accurately quoted, in part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress….

271.   Plaintiff Dennis Udovich previously held a valid white-tailed deer registration.

272.   Udovich, for personal reasons, decided to get out of his profession or occupation as a white-tailed deer farmer, but sought again to pursue his calling.

273.   Minnesota Statutes § 35.155, subd. 10(c) prohibits Udovich from obtaining a white-tailed deer registration from the DNR. Hence, Udovich is completely prohibited from pursuing his calling, profession, or occupation.

52

274.     Nevertheless, Minn. Stat. § 35.155, subd. 10(c) allows people, with current valid white-tailed deer registrations to sell or transfer those registrations to an immediate family member, allowing for those interested to pursue the profession or occupation as a white-tailed deer farmer. These would include plaintiffs such as Bloome, Boon, Clark, Evans, Fier, Graves, Hanson, Lien, Steve and Peggy Porter, Robokoff, Salonek, Seitz, Jim Simonson, Tvedt, Steve and Melissa Uchytil, Volk, Whitomb, and Williams.

275.     Udovich believes that, as a class of one who is completely prohibited from pursuing his calling as a white-tailed deer farmer, Minn. Stat. § 35.155, subd. 10(c) violates the Equal Protection Clause of the Fourteenth Amendment.

276.     Minnesota Statutes § 35.155, subd. 10(c) has created two classes of white-tailed deer farmers—those who seek to pursue their calling but are completely prohibited from doing so—and those, who may continue to deer farm when they purchase or have transferred to them an existing valid white-tailed deer registration as an immediate family member.

277.     There is no reasonable justification for creating two classes and treating them differently under Minn. Stat. § 35.155, subd. 10(c).

278.     In creating two classes, Minn. Stat. § 35.155, subd. 10(c) discriminates between those that may continue to pursue their calling as white-tailed deer farmers solely because they are immediate family members and those that do not and wish to seek their calling but are completely prohibited from doing so.

279.     Plaintiffs request this Court to declare Minn. Stat. § 35.155, subd. 10(c) as violating the Fourteenth Amendment's Equal Protection Clause finding the statutory

provision unconstitutional, issue the appropriate injunctive relief regarding the constitutional violation, award reasonable attorney fees and costs and all other available relief under the law as is necessary or just under the allegations as pled.

## Count IV

**Violation of civil rights under 42 U.S.C. § 1983, for violation of Takings Clause, seeking declaratory and injunctive relief against the DNR or the Board of Animal Health or both.**

280.     Plaintiffs adopt and incorporate by reference all previous paragraphs as if fully restated in support of the further allegations asserted under Count IV, but for one plaintiff, Dennis Udovich.

281.     The Takings Clause of the Fifth Amendment to the United States Constitution reads as follows: "Nor shall private property be taken for public use, without just compensation." The Takings Clause has been incorporated to apply to the states and local governments.

282.     Under 42 U.S.C. § 1983, the statutory provisions provide persons a federal cause of action based on state violations of federal law.

283.     The takings clause under the Minnesota Constitution is found under Article I, section 13, and is accurately quoted as follows:

> Private property shall not be taken, destroyed or damaged for public use without just compensation therefor, first paid or secured.

284.     The purpose of the Takings Clause is to strike a balance between the rights of private property owners and the right of the government to take that property for a purpose that benefits the public at large.

285.    Minnesota Statutes § 35.155 authorizes the DNR Commissioners to "seize and destroy" illegally possessed farmed cervidae."

286.    The state law, as a restraint on the alienation of deer livestock, falls within the scope of the Takings Clause.

287.    The state law's restraint on alienation of deer livestock is a taking.

288.    The state law's restraint on alienation of deer livestock is legally unauthorized and constitutionally unenforceable under the Taking Clause.

289.    Public use and adequacy of compensation are the two main factors used to evaluate whether a taking by the government is legally authorized.

290.    First, the state law's restraint on alienation of deer is not supported by a public use.

291.    The state law is a restraint on the alienation of deer livestock.  It literally prohibits the transfer of property to non-registered, non-family members while allowing a one-time transfer to a family member.

292.    The state law's restraint on alienation of deer livestock involves property rights that are a fundamental right referenced in the Fifth Amendment's Takings Clause: "Nor shall private property be taken for public use, without just compensation."

293.    There is no public purpose for the restraint on alienation of deer livestock because containing CWD does not justify a restraint on alienation of deer livestock.

294.    The government has alternative and less restrictive means to contain CWD without a restraint on alienation of deer livestock.

295.     The DNR, when CWD is found within a farmed white-tailed deer operation, is authorized to destroy the entire herd.

296.     When the DNR destroys the entire white-tailed deer herd of any one of the plaintiffs, but for Udovich, the farmer is not compensated for that loss.

297.     The government has acted in the past to compensate livestock farmers that were destroyed to prevent the transmission of disease, such as bovine tuberculosis found in cattle, as found under Minn. Stat. § 35.086, subd. 2.

298.     The government's stated purpose for the state law's restriction on alienation of deer livestock is containing CWD but the state has enacted statutory and regulatory restrictions to contain CWD.

299.     Minnesota Statutes § 35.155, authorization of the DNR Commissioner to seize and destroy farmed cervidae is not narrowly tailored to the purposes of curtailing CWD.

300.     The national farmed cervidae industry, including in Minnesota, the Minnesota Deer Farmers Association, have taken a proactive approach to CWD: monitoring programs, contributed funding for research for testing procedure, and DNA testing.

301.     Other farmed deer herd certification programs and other initiatives within the industry have been effective.

302.     There is no direct evidence in Minnesota to connect CWD found in wild deer to a farmed white-tailed deer farm or vice versa.

303.    The plaintiffs believe that the state's restrictions on the alienation of deer livestock is a taking under the Takings Clause and is illegal because no compensation is provided to the plaintiffs, but for Udovich.

304.    Additionally, the state laws authorizing seizure and destruction of deer livestock based on constitutionally unenforceable restrictions on alienation of deer livestock is an uncompensated taking under the federal Takings Clause.

305.    This statutory restriction on alienation is unconstitutionally unreasonable and, therefore, unenforceable.

306.    The statutory authorization of the DNR Commissioner to seize and destroy deer livestock sold to non-registered, non-family members is also a taking under the federal Takings Clauses.

307.    Plaintiffs request this Court to reach a favorable decision for declaratory judgment and issue the appropriate injunctive relief regarding the constitutional violation, award reasonable attorney fees and costs, and all other available relief under the law as is necessary or just under the allegations as pled.

## Count V

## State Inverse Condemnation Claim

**The seizure and destruction of white-tailed deer livestock is based on a constitutionally unenforceable restriction on alienation is a taking.**

308.    Plaintiffs adopt and incorporate by reference all previous paragraphs as if fully restated in support of the further allegations asserted under Count V.

309.    The State Minnesota, by waiver of its sovereign immunity, bestow upon property owners the right to sue in inverse condemnation by statute for just compensation—monetary damages.  Minnesota Statutes § 117.045 states:

> 117.045 COMPELLING ACQUISITION IN CERTAIN CASES. Upon successfully bringing an action compelling an acquiring authority to initiate eminent domain proceedings relating to a person's real property which was omitted from any current or completed eminent domain proceeding, such person shall be entitled to petition the court for reimbursement for reasonable costs and expenses, including reasonable attorney, appraisal and engineering fees, actually incurred in bringing such action…

310.    The Plaintiffs believe, but for Udovich, that under Minn. Stat. § 117.045, the statutory provisions provide persons a state private cause of action to sue for uncompensated takings under the Minnesota and U.S. Constitutions.

311.    The state law falls within the scope of the Takings Clauses of the Minnesota and U.S. Constitutions.

312.    The state laws authorizing seizure and destruction of deer livestock based on constitutionally unenforceable restriction on alienation of deer livestock is an uncompensated taking under both federal and state Takings Clauses.

313.    The state law authorizes the DNR and DNR Commissioner to seize and destroy deer livestock sold to non-registered, non-family members.

314.    This statutory restriction on alienation enforced by the DNR is unconstitutionally unreasonable and, therefore, unenforceable.

315.    The statutory authorization of the DNR Commissioner to seize and destroy deer livestock sold to non-registered, non-family members is a taking under the federal and state Takings Clauses.

316.    Plaintiffs request this Court to reach a favorable decision for declaratory judgment against the DNR that the state law is a taking, enjoin enforcement, require just compensation, award damages, and to award reasonable attorney fees and costs, and all other relief this Court may deem appropriate and just under the circumstances alleged.

## Jury Trial Demanded

317.    The Plaintiffs demand a jury trial regarding the allegations asserted in the instant Complaint.

## Relief Requested

Wherefore, the Plaintiffs request that this Court:

A.    Declare, under either or both federal and state declaratory judgments acts, that Minnesota Statutes § 35.155, subd. 10 violates Plaintiffs' constitutional  rights under the Equal Protection Clause, Due Process Clause, or the Takings Clause;

B.    Grant permanent injunctive relief against the enforcement of Minnesota Statutes § 35.155, subd. 10;

C.    Issue a judgment awarding just compensation damages to which Plaintiffs are entitled to under the federal Takings Clause and the Minnesota Takings Clause; and

D.    Issue a judgment awarding Plaintiffs their reasonable attorney fees, litigation expenses, and costs as allowed under 42 U.S.C. § 1988, and all other applicable laws; and

E.   All other relief, monetary or otherwise, this Court deems just or

reasonable under the circumstances and under the claims alleged in this

Complaint.

Dated: December 28, 2023          /s/ Erick G. Kaardal
                                  Erick G. Kaardal, No. 229647
                                  Gregory M. Erickson, No. 276522
                                  Mohrman, Kaardal & Erickson, P.A.
                                  150 South Fifth Street, Suite 3100
                                  Minneapolis, Minnesota 55402
                                  Telephone: 612-341-1074
                                  Email: kaardal@mklaw.com

                                  *Attorneys for the Plaintiffs*